| | AUSA: | Andrew Picek | Telephone: (313) 226-9100 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Ryan Thick | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
### for the
## Eastern District of Michigan

| | | |
|---|---|---|
| United States of America<br>v.<br>Katrina Jackson | Case No. | Case: 2:26−mj−30152<br>Assigned To : Unassigned<br>Assign. Date : 3/20/2026<br>Description: CMP USA V. JACKSON (DJ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 12, 2026 and March 13, 2026___ in the county of _____Wayne_____ in the ___Eastern___ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) & (2) | Aiding and abetting; Felon in possession of a firearm |
| 18 U.S.C. § 3 | Accessory after the fact |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Thick, Special Agent (A.T.F.)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __March 20, 2026__

City and state: __Detroit, Michigan__

_____
*Judge's signature*

Hon. Kimberly G. Altman, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Ryan Thick, Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been since November 2022. I have a bachelor's degree in criminal justice and a master's degree in business management and leadership. To become an ATF Special Agent, I completed 26 weeks of training, including the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. Throughout my law enforcement career, I have participated in numerous state and federal investigations into firearm and explosive offenses. I received extensive training on firearms identification, common scenarios involving firearms and narcotics trafficking, and identification of controlled substances. Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and recognition of common subject behavior.

2. While with ATF, I have investigated violent crimes, narcotics trafficking, and firearms related criminal violations. I have executed search and arrest warrants, utilized confidential informants, performed interviews, analyzed

data extracted from seized cellular devices, and engaged various surveillance techniques, including physical, electronic, and visual surveillance.

3.     I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), and I am empowered to conduct investigations and make arrests of offenses enumerated under federal law.

4.     I am currently assigned to the Pontiac Gun Violence Task Force ("GVTF"). Additionally, I am a member of the ATF led Crime Gun Enforcement Team ("CGET"). The GVTF and the CGET are tasked with investigating the unlawful possession of firearms and violent firearm crimes committed within the city of Pontiac, Oakland County, and the Eastern District of Michigan.

5.     This affidavit is in support of criminal complaint and application for an arrest warrant for Katrina JACKSON for the crimes of aiding and abetting felon in possession of a firearm, in violation of Title 18 U.S.C. §§ 922(g)(1) and 2, and accessory after the fact, in violation of Title 18 U.S.C. § 3, committed on March 12 and 13, 2026.

6.     The facts in this affidavit come from my review of police reports, training, experience, conversations with ATF Special Agents and information provided by other sworn law enforcement officers.  This affidavit is intended to show that there is sufficient probable cause and does not set forth all information known to law enforcement regarding this investigation.

2

## SUMMARY OF THE INVESTIGATION

7.     On March 12, 2026, Detroit Police Officers responded to a Shotspotter report of shots fired on Westphalia Street. On arrival, officers encountered JACKSON, sitting in a Ford Edge registered to her boyfriend, Derryc Leonard. JACKSON told officers she did not hear or see any shots fired, and claimed she was waiting in her friend's car for a ride to come pick her up. JACKSON stated her friend had left about five minutes ago. The officers collected one .40 caliber fired cartridge casing from the parking lot, and eight additional .40 caliber fired cartridge casings in a nearby alley.

8.     On March 13, 2026, officers from the Detroit Police Department (DPD) responded to a "shots fired into an occupied dwelling" police run on the 900 block of King Street, Detroit, within the Eastern District of Michigan.

9.     Upon arriving on scene officers met with the victim (V1). V1 was inside his/her residence when V1 heard gunfire. V1 noted the front glass door was shattered and appeared to have been impacted by bullets.  Officers located five .40 caliber fired cartridge casings at the scene, confirming a shooting had occurred.

10.     V1 did not see who fired the shots but told officers that he/she believed the shooter was likely an individual using the Facebook account "NepRange."  V1 explained there was an ongoing argument between NepRange's girlfriend (later

3

identified as JACKSON), and V1. V1 further indicated she had recently received threats from NepRange.

11. V1 did not know NepRange's name but knew that he drove a burgundy SUV similar to a Chevy Equinox and knew NepRange's girlfriend's nickname was "Trina."

12. DPD Detectives identified NepRange as Derryc Leonard, based upon social media research, Secretary of State records, and other information.

13. Investigators administered a double-blind photo line up to V1 which contained Leonard. Following the line up procedure V1 positively identified Leonard as the person V1 knew as NepRange. V1 also identified a photo of JACKSON as the person V1 knew by the nickname "Trina."

14. Investigators reviewed surveillance footage near the March 13, 2026, shooting scene and observed what appeared to be the Ford Edge traveling eastbound toward V1's residence at approximately 12:01 AM, which is around the estimated time of the shooting.

15. Investigators tracked the Ford Edge using surveillance cameras from the last known direction of travel to Super Coney Island located at 1141 Clay Street, Detroit, where it arrived at 12:02 AM (less than two minutes after the shooting). The Ford Edge parked at the Coney Island. Surveillance footage shows that JACKSON was driving the car. JACKSON got out of the driver's seat and

4

Leonard got out of the front passenger seat of the Ford Edge. Leonard was holding what appeared to be a black semiautomatic pistol in his right hand.

*Leonard holding the pistol in his right hand after getting out of the Ford Edge:*



16.    Surveillance footage and license plate readers showed that after the shooting, the Ford Edge left the Coney Island and traveled directly to an apartment on East Seven Mile Road in Detroit.

17.    The fired cartridge casings from both shooting scenes were entered into the National Integrated Ballistic Information Network (NIBIN) for comparison to other fired casings from other crime scenes in the database. NIBIN returned a preliminary match between the two shooting scenes.

5

18.     On March 19, 2026, the Honorable United States Magistrate Judge Kimberly G. Altman authorized a criminal complaint and arrest warrant for Derryc Leonard, charging him with being a felon in possession of ammunition under 18 U.S.C. § 922(g)(1) on March 13, 2026. (E.D.Mich. 26-mj-30147).

19.     On March 19, 2026, the Honorable United States Magistrate Judge Elizabeth A. Stafford of the United States District Court for the Eastern District of Michigan authorized search warrants for JACKSON's home and Leonard's apartment in Detroit.

20.     ATF agents executed the search warrants on March 20, 2026, and evidence linking Leonard and JACKSON to the shootings were found at both locations.

21.     Agents found the clothing worn by Leonard during the shooting inside JACKSON's bedroom. Leonard's Ford Edge, that JACKSON drove during the shooting, was parked in the driveway.  Leonard was also in JACKSON's bedroom when agents entered the home.

22.     At Leonard's apartment, agents located a .40 caliber handgun, consistent with the firearm used in both shooting. NIBIN testing is currently pending. Agents also found Leonard's State of Georgia ID card, State of Georgia Department of Corrections Identification Card and additional documents that included Leonard's name and address.

6

23.     JACKSON was interviewed following the search warrant at her residence. After waiving her Miranda Rights, JACKSON made the following statements supporting that she was an accessory after the fact to felon in possession of a firearm.

      a.  JACKSON admitted she knew Leonard was a convicted felon prohibited from possessing firearms and knew that he was on parole.

      b.  JACKSON admitted she was present during both shooting incidents and saw Leonard with a gun during both incidents.

      c.  JACKSON admitted she was driving his Ford Edge during the March 13, 2026, shooting. JACKSON explained Leonard got out of the vehicle prior to shooting, then she heard gun shots and she saw Leonard enter the vehicle with a firearm.  JACKSON said no one else exited the vehicle prior to hearing the gunshots.

**Prohibited Status**

24.     In March of 2026, I reviewed Leonard's Computerized Criminal History from LEIN and publicly available court records and learned that on October 13, 2006, Leonard was convicted of felony assault with intent to do great bodily harm and felony firearm in the Third Circuit Court of Wayne County, Michigan.

25.     Additionally, I learned that Leonard was convicted of Armed Robbery, Aggravated Assault with a Deadly Weapon, and Possession of a Firearm During the

7

Commission of a Felony on September 16, 2019, in the Fulton County Superior Court of Georgia.

26.    LEONARD was paroled in Georgia in October 2025. In November, his parole supervision was transferred to the Michigan Department of Corrections.

**Interstate Nexus**

27.    On March 18, 2026, ATF Interstate Nexus Expert S/A Joshua McLean was provided a description of one of the headstamps from the fired cartridge casings recovered at the shooting scene on March 13, 2026.  The head stamp indicated "Federal .40 S&W."

28.    S/A McLean advised .40 caliber Federal ammunition is manufactured outside of the state of Michigan and thus concluded it would have traveled in and affected interstate or foreign commerce.

29.    S/A McLean further advised there are no mass-produced firearms manufacturers presently operating within the state of Michigan and thus the pistol depicted in the surveillance footage was likely manufactured outside the state of Michigan and would have traveled in and affected interstate or foreign commerce.

**CONCLUSION**

30.     Probable cause exists that Katrina JACKSON knew that Derryc Leonard was a convicted felon and aided and abetted his possession of a firearm on March 12 and 13, 2026, in violation of Title 18 U.S.C. §§ 922(g)(1) and 2. Furthermore, probable cause exists that Katrina JACKSON knew that Derryc Leonard had committed the offense of felon in possession of a firearm, and thereafter received relieved, comforted, and assisted Leonard in order to hinder or prevent his apprehension, trial, or punishment for that offense, in violation of Title 18, U.S.C. § (3).

Respectfully submitted,

_____
Ryan Thick
ATF Special Agent

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HONORABLE KIMBERLY G. ALTMAN
UNITED STATES MAGISTRATE JUDGE

Dated: March 20, 2026

9